1  Kyle P. Kelley, Esq. [State Bar No. 178302]
   e-mail:   kkelley@kpklaw.com
2  LAW OFFICES OF KYLE P. KELLEY
   433 North Camden Drive, Suite 965
3  Beverly Hills, California 90210
   Telephone:   (310) 273-0590
4  Facsimile:   (310) 273-1115

5  Attorney for Plaintiff
   ANTHEM MUSIC & MEDIA GROUP
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 ANTHEM MUSIC & MEDIA GROUP, a          )  CASE NO. CV12-05829JFW(JCGx)
   Delaware limited liability            )
12 company, doing business as THE        )  COMPLAINT FOR COPYRIGHT
   BICYCLE MUSIC COMPANY,                )  INFRINGEMENT
13                                        )
                      Plaintiff,         )       DEMAND FOR JURY TRIAL
14                                        )
   vs.                                   )
15                                        )
   FLYER ENTERTAINMENT, INC., a          )
16 California Corporation;               )
   TWENTIETH CENTURY FOX HOME            )
17 ENTERTAINMENT, a business             )
   entity form unknown,                  )
18                                        )
                      Defendants.        )
19 _____       )

20

21     Plaintiff ANTHEM MUSIC & MEDIA GROUP, a Delaware limited

22 liability company, doing business as THE BICYCLE MUSIC COMPANY

23 hereby alleges as follows:

24                        **THE PARTIES**

25     1.   ANTHEM MUSIC & MEDIA GROUP, is a limited liability

26 company, organized and existing under the laws of the State of

27 Delaware, and doing business as THE BICYCLE MUSIC COMPANY

28 (hereinafter "Bicycle"), with its principal places of business in

                              1

1  the city of New York, New York and in the city of Beverly Hills,
2  California.

3      2.   Defendant Flyer Entertainment, Inc. ("Flyer") is a
4  corporation organized and existing under the laws of the State of
5  California with its principal place of business in the city and
6  county of Los Angeles, California.

7      3.   Plaintiff is informed and believes and based thereon
8  alleges that defendant Twentieth Century Fox Home Entertainment
9  ("FHE") is a corporation organized and existing under the laws of
10 the State of Delaware, with its principal place of business in the
11 city and county of Los Angeles.

12                    **JURISDICTION & VENUE**

13     4.   This Court has exclusive jurisdiction over plaintiff's
14 claims under 28 U.S.C. §1338 in that the copyright infringement
15 claims alleged arise under the Copyright Act of the United States,
16 17 U.S.C. §501 et seq.

17     5.   Venue is proper in this judicial district pursuant to 28
18 U.S.C. 1400(a) because defendants reside in or may be found in this
19 judicial district.

20                    **FIRST CLAIM FOR RELIEF**

21          (Copyright Infringement - Against All Defendants)

22     6.   Bicycle is the owner and/or administrator of a catalogue
23 of numerous copyrights in musical compositions and sound
24 recordings, which it licenses to various entities for use in film,
25 television and other media outlets.

26     7.   As pertains to this lawsuit, Bicycle is the administrator
27 of the copyright in the composition entitled *Doorways* written by
28 Ben Cooper, who performs under the professional name Radical Face

1   (hereinafter "Artist"). Bicycle is also the administrator of
2   Artist's sound recording copyright for *Doorways*, which was released
3   on the Radical Face album entitled *Touch the Sky*. The PA and SR
4   applications for the composition and the sound recording copyright
5   have been filed with the United States Copyright Office.

6      8. This action arises from the use of the *Doorways*
7   composition and master recording by defendant Flyer, the agent of
8   FHE, in connection with a marketing campaign by FHE celebrating the
9   "Year of a Million Moments" (the "Campaign"). Plaintiff is
10  informed and believes and based thereupon alleges that FHE retained
11  Flyer to create various promotional trailers which would be used by
12  FHE to promote the Campaign in theaters, home video and on the
13  internet.

14     9. In or about January, 2011, defendant Flyer, acting as the
15  agent of FHE, requested that Bicycle issue a synchronization
16  license for the Doorways composition, for generic use in the
17  Campaign. Bicycle issued a synchronization license for the
18  composition for a term of six (6) weeks for theatrical, television
19  and internet streaming, and five (5) years for home entertainment.
20  The fee for the use was $35,000. Flyer executed this
21  synchronization license agreement on or about January 7, 2011 and
22  paid the fee on or about January 31, 2011.

23     10. In or about January, 2011, defendant Flyer, acting as the
24  agent of FHE, requested that Morr Music (the predecessor licensor
25  of the sound recording in the United States), issue a Master Use
26  License for the generic Campaign trailer. Morr Music issued the
27  license for the sound recording for a six (6) week term for all
28  media, and five (5) years for DVD/home entertainment. The fee for

3

COMPLAINT

1  the use was $35,000.00.   Plaintiff is informed and believes and
2  based thereon alleges that defendant Flyer executed this agreement
3  and paid the fee for the license.

4       11.  On or about March 28, 2011, Flyer requested, and Bicycle
5  agreed, that the January 7, 2011 synchronization license be amended
6  to extend the term of the agreement for internet streaming to
7  November 30, 2011 in exchange for the additional payment of $5,000,
8  which was paid on or about August 31, 2011.  Morr Music issued an
9  extension to Master Use License for the use of the sound recording
10  for the same fee, use and term in exchange for payment of $5,000.

11       12.  On  or  about  October  18,  2011,  Bicycle  issued  an
12  additional synchronization license for the Doorways composition for
13  use in a trailer called "Own the Moments" which would be used in
14  the Campaign.   This synchronization license had a one (1) year
15  term, commencing on November 1, 2011, and for internet streaming
16  only.   The fee for this license was $12,000, which was paid on
17  December 13, 2011.

18       13.  On or about November 1, 2011, Nettwerk Productions, the
19  licensing agency for Artist, issued a Master Use License for use of
20  the sound recording for Doorways by Radical Face in the generic
21  trailer for the Campaign.  The license provided for a one year term
22  and a fee of $12,000.00.  A true and correct copy of the Generic
23  License  Agreement  is  attached  hereto  as  Exhibit  "A"  and
24  incorporated herein by this reference as though set forth in full.

25       14.  Defendant Flyer failed and refused to execute and return
26  Exhibit "A", and failed and refused to pay the quoted and mutually
27  agreed upon license fee.  Nevertheless, defendants used the sound
28  / / /

4

COMPLAINT

1 recording in the generic trailer for the Campaign, in violation of
2 the copyright in the sound recording.

3     15. On or about November 3, 2011, Bicycle issued a
4 synchronization license for the *Doorways* composition for use in a
5 domestic holiday trailer in connection with the Campaign, the term
6 of which was six (6) weeks for the internet and four (4) weeks for
7 theatrical, and the fee for which was $27,500.00. A true and
8 correct copy of the synchronization license is attached hereto as
9 Exhibit "B" and incorporated herein by this reference as though set
10 forth in full.

11     16. Defendant Flyer failed and refused to execute and return
12 Exhibit "B", and failed and refused to pay the quoted and mutually
13 agreed upon license fee. Nevertheless, defendants used the
14 composition in the domestic holiday trailer, in violation of the
15 copyright in the *Doorways* composition.

16     17. On or about November 4, 2011, Nettwerk Productions issued
17 a Master Use License for the sound recording of *Doorways* by Radical
18 Face, a true and correct copy of which is attached hereto as
19 Exhibit "C" and incorporated herein by this reference as though set
20 forth in full. This master use license was for use of the *Doorways*
21 sound recording in defendants' "Holiday Domestic" trailer for the
22 Campaign, and provided for a term of six (6) weeks for internet
23 use, and four (4) weeks theatrical commencing November 5, 2011.
24 The fee for this license was $27,500.00.

25 / / /
26 / / /
27 / / /
28 / / /

1    18.   Defendant Flyer failed and refused to execute and return
2    Exhibit "C", and failed and refused to pay the  and mutually agreed
3    upon  license  fee.    Nevertheless,  defendants  used  the  sound
4    recording in the domestic holiday trailer, in violation of the
5    copyright in the *Doorways* sound recording.

6    19.   On or about January 25, 2012, Netwwerk issued a Master
7    Use License to defendant Flyer, on behalf of FHE, for the sound
8    recording of *Doorways* by Radical Face in the "Own the Moments"
9    trailer used to promote the Campaign, a true and correct copy of
10   which is attached hereto as Exhibit "D" and incorporated herein by
11   this reference as though set forth in full.

12   20.   Defendant Flyer failed and refused to execute and return
13   Exhibit "D" and failed and refuse to pay the mutually agreed upon
14   license fee.  Nevertheless, defendants used the sound recording in
15   the "Own the Moments" trailer, all in violation of the copyright in
16   the *Doorways* sound recording.

17   21.   On or about March 16, 2012, Bicycle issued an amendment
18   to the January 7, 2011 synchronization license to extend the "out
19   of home use" from the date of the Amendment through July 31, 2012,
20   in exchange for an additional payment of $6,000.  A true and
21   correct copy of the Amendment is attached hereto as Exhibit "E" and
22   incorporated herein by this reference as though set forth in full
23   herein.

24   22.   Defendant Flyer failed and refused to execute and return
25   Exhibit "E", and failed and refused to pay the  and mutually agreed
26   upon license fee.  Nevertheless, defendants continued using the
27   composition in the generic trailer in the "out of home use"
28   / / /

1  category, all in violation of the copyright in the *Doorways*
2  composition.

3      23.  On or about March 30, 2012, Nettwerk Productions issued
4  a Master Use License for the *Doorways* sound recording to defendants
5  in the"Own the Moment" trailer as part of the Campaign, for a term
6  commencing on March 16, 2012 and expiring on July 31, 2012, in
7  exchange for payment of an additional license fee of $6,000.00. A
8  true and correct copy of the Master Use License is attached hereto
9  as Exhibit "F" and incorporated herein by this reference as though
10 set forth in full.

11     24.  Defendant Flyer failed and refused to execute and return
12 Exhibit "F", and failed and refused to pay the quoted and mutually
13 agreed upon license fee.  Nevertheless, defendants used the sound
14 recording in the "Own the Moments" trailer, in violation of the
15 copyright in the *Doorways* sound recording.

16     25.  As a direct and proximate result of defendants'
17 infringement and the distribution and performance of the infringing
18 work, plaintiffs have been damaged in an amount according to proof
19 at trial.  As a further direct and proximate result of defendants'
20 infringement, defendants have been unjustly enriched by the use of
21 the trailer, in an amount according to proof at trial, which
22 profits should be disgorged.

23     WHEREFORE, plaintiff prays judgment against the defendants,
24 and each of them, as follows:

25     1.  For actual damages in an amount according to proof at
26 trial;

27 / / /

28 / / /

2.    For an order requiring defendants to disgorge all profits attributable to the sale, distribution and performance of the infringing work;

3.    For an order enjoining the further use of the sound recording and the composition;

4.    For pre-judgment interest;

5.    For costs of suit; and

6.    For such other and further relief as may be just and proper.

Dated:    July 4, 2012                    Law Offices of Kyle P. Kelley

                                          By:_____/s/_____
                                              Kyle P. Kelley
                                              Attorney for Plaintiff

1

## DEMAND FOR JURY

2

Plaintiff hereby demands trial by jury.

3

Dated:     July 5, 2012                         Law Offices of Kyle P. Kelley

4

5

6

By:_____·___/s/_____
         Kyle P. Kelley
7                                       Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MASTER USE LICENSE**
**ADVERTISEMENT**

This Master Use License Agreement (the "Agreement") is made and entered into as of November 1, 2011 by and between Nettwerk Productions ("Licensor") and Flyer Entertainment ("Licensee").

    A. Licensor is the exclusive owner of those certain master recordings (the "Master"), including the sound recording copyrights therein, embodying the musical performance of Radical Face (the "Artist") of the musical composition entitled "Doorways" (the "Composition").

    B. Licensee as agent for Fox (the "Client") is engaged in the business of producing advertisements and, with respect thereto, has produced an advertisement entitled "Own The Moments International" (the "Advertisement").

    C. Licensee desires to utilize the Master in connection with the creation of the Advertisement and the marketing of Fox Million Moments (the "Product").

NOW THEREFORE, in consideration of the mutual covenants set forth herein, the parties do hereby agree as follows:

    1. USE:    The length, number and type of uses of the Master to be licensed by Licensee hereunder is as follows:

|   | Length | Type |
|---|--------|------|
| a. | Up to 1:37 | Background Vocal |

    2. TERRITORY:    The territory covered under this license shall be the World (the "Territory").

    3. GRANT OF RIGHTS:    Subject to the terms hereof, Licensor hereby grants to Licensee as agent for the Client the non-exclusive, limited right, license and authority to do any or all of the following only:

    a. To record and to re-record and dub throughout the Territory the aforesaid type and use of the Master in synchronization or timed relation with the Advertisement for the Product, but not otherwise, and to make copies of such Advertisement containing the Master, all in accordance with the terms, conditions, and limitations set forth herein. Licensor shall supply Licensee, upon Licensee's request, with a tape copy of the Master for use as specified herein, and Licensee shall pay Licensor's usual charges in connection with the making and delivering of any such tape copy;

    b. To exhibit the Master as embodied in the Advertisement, and portions thereof, to audiences throughout the Territory by means of Internet exhibition, all in

1

accordance with the terms, conditions, limitations, and reservations hereinafter set forth.

4. TERM:    The Master may be used in the Program for a term of one (1) year, commencing November 1, 2011 and ending October 31, 2012 (the "Term").

5. ANCILLARY PAYMENTS:    Licensee shall make any and all payments to all musicians, vocalists, arrangers, and copyists whose performances are embodied in the Master which may be required under the American Federation of Musicians Labor Agreement, the American Federation of Television and Radio Artists Labor Agreement, or any other applicable and binding union agreement in connection with the so-called "re-use" of the Master. Further, Licensee shall make any and all necessary synchronization license payments to the publisher(s) of the compositions embodied in the Master. Licensee shall indemnify Licensor and hold Licensor free and harmless from and against any and all claims, liabilities, costs, losses, damages or expenses, including reasonable attorney's fees and court costs, arising out of any failure or breach by Licensee with respect to its obligations as set forth in this paragraph.

6. MASTER USE FEE:    For the use of the Master in connection with the Advertisement as set out in paragraph 3 above, Licensee shall pay to Licensor the sum of Twelve Thousand United States Dollars (USD $12,000.00) (the "Fee") on a most favoured nations basis with the licensor of the rights in the Composition used in the Advertisement provided that such licensor is granting substantially the same rights in the Composition as Licensor has granted in the Master hereunder;

7. PAYMENT DEFAULT:

   a. Licensee shall pay Fee no later than Thirty (30) days following the date of receipt of the Agreement if delivered via courier or email, or Forty (40) days from date of postmark if delivered via regular post. In the event that Licensee fails to pay to Licensor the Fee as specified herein, Licensor shall give Licensee written notice that, unless such default is remedied within Thirty (30) days from receipt of the notice, such default shall constitute a breach of this Agreement and an infringement of the Licensor's copyright in the Master;

   b. Licensor's rights and remedies in the event of a breach or alleged breach of this Agreement by Licensee, other than a failure by the Licensee to pay the Fee to the Licensor, shall be limited to Licensor's right, if any, to recover damages in an action at law and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Advertisement.

8. NON-EXCLUSIVITY:    All rights granted hereunder are granted on a non-exclusive basis and Licensor shall have the right to grant similar licenses for the use of the Master to other licensees without limitation.

2

9. RESERVATION OF RIGHTS:   This Agreement does not authorize or permit any use of the Master not expressly set forth herein, and all other rights are expressly reserved. By way of clarification and not in limitation thereof, this license does not grant the right to record the Master on any phonograph records, cassettes, compact discs, or other sound-only configurations now known or unknown.

10. LICENSOR WARRANTY:       Licensor warrants that it (i) owns or controls all rights in and to the Master and that the consent of no other party is required in connection with Licensee's use of the Master as herein authorized, with the exception of the parties set forth in paragraph 5 hereof, which consent Licensee shall obtain, and (ii) that it has the legal right to grant this license, and this license is given and accepted without any other warranty or recourse. If said warranty shall be breached in whole or in part, Licensor shall either re-pay to Licensee the consideration theretofore paid to Licensor by Licensee for this license, to the extent of the part thereof which is breached, or shall hold Licensee harmless to the extent of the consideration theretofore paid to the Licensor by Licensee for this license. In no event shall Licensor's total liability exceed the amounts received by it hereunder.

11. LEGAL ACTION:       This Agreement shall be governed by and subject to the laws of the State of California, applicable to agreements made and to be wholly performed within such state.

12. ASSIGNABILITY:       Licensee and Licensor shall have the right to assign this Agreement and any rights granted to Licensee or Licensor hereunder, and any of their respective obligations hereunder, to any third party, in which event this license shall be binding upon and shall inure to the benefit of the respective successors and/assigns of the parties hereto; provided, however, that Licensee and Licensor shall remain secondarily liable with regard to their respective duties under this Agreement.

13. NOTICES: All notices hereunder shall be in writing and shall be given by personal delivery to an officer of Licensee or Licensor, or by mail in the United States mail, postage pre-paid, or by telecopier, or by telegraph with all charges pre-paid, at the addresses set forth herein, or such other address as either Licensee or Licensor may designate by notice to the other, and the date of such personal delivery, mailing, telecopying, or telegraphing shall be the time of the giving of such notice.

NPP- Advertisement - Master

Exhibit "A"  Page 3

IN WITNESS WHEREOF, the parties have caused the foregoing to be executed as of the date and year first above written.

FLYER ENTERTAINMENT

NETTWERK PRODUCTIONS
FED ID# 98-0180464

By: _____

By: _____

Title: _____
    An authorized signatory
Address:
12100 Olympic Blvd., Suite 335
Los Angeles, CA 90064
USA

Title: BUSINESS AFFAIRS
    An authorized signatory
Address:
1650 West 2nd Avenue
Vancouver, BC  V6J 4R3
Canada

4

## SYNCHRONIZATION LICENSE

This synchronization license agreement ("Agreement") is entered into as of November 3, 2011 by and between Anthem Music and Media Group d/b/a The Bicycle Music Company c/o Penny Farthing Music (ASCAP) o/b/o Roy Berry Works At Planet Radio (ASCAP), 449 South Beverly Drive, Suite 300, Beverly Hills, CA 90212 ("Licensor") and Flyer Entertainment, 12100 Olympic Blvd #335, Los Angeles, CA 90064 o/b/o its client, Fox Home Entertainment (collectively "Licensee").

    1.    Licensee is engaged in the home entertainment business and in connection therewith is producing and/or distributing a promotional trailer entitled Fox Million Moments "Holiday Domestic" ("Trailer").

    2.    Licensor owns and/or controls 100% of the composition entitled **"DOORWAYS"** written by Benjamin Cooper as performed by Radical Face ("Composition").

    3.    Territory: The territory covered by this Agreement is North America.

    4.    Term: The term of this Agreement shall be for a period of six (6) weeks for internet commencing from November 4, 2011 and four (4) weeks for theatrical exhibition commencing from November 7, 2011.

    5.    Use: Background vocal for approximately two (2) minutes (2:00).

    6.    Media: All forms of theatrical and internet (streaming only).

    7.    Intentionally deleted.

    8.    License Fee: The fee set forth herein is Twenty-Seven Thousand Five Hundred U.S. Dollars ($27,500.00) for use of the Composition in the Trailer payable upon execution of this Agreement. Notwithstanding anything to the contrary contained herein, the consideration paid to Licensor hereunder shall be no less than that accorded to the master owner who has licensed their respective rights to Licensee for use in the Trailer.

    9.    Grant of Rights: In consideration of the payment of the License Fee, Licensor hereby grants to Licensee the non-exclusive right throughout the Territory to cause or authorize the fixation of the Composition in the Trailer and to distribute and/or broadcast the Trailer for use in the Media.

    10.    Performance Rights: At the end of each calendar quarter during which the Trailer is broadcast, Licensee shall furnish Licensor with reports of all broadcast media buys made by Licensee with respect to the Trailer, including the names of the stations over which the Trailer is broadcast and the time, date and ISCI code for such broadcast.

1

11. Reservation of Rights: Licensor specifically reserves unto itself all rights of every kind and nature except those specifically granted to Licensee herein.

12. Licensor's Warranty and Indemnification: Licensor warrants that it has the legal right to grant the rights specified hereunder and that the proper exercise by Licensee of the rights granted herein will not infringe upon the rights of any third party. Licensor shall indemnify, defend and hold Licensee harmless against any claims, liabilities, losses or damages actually incurred by Licensee as a result of Licensor's breach of this warranty but in no event shall Licensor's aggregate liability exceed the amount of the License Fee paid to Licensor hereunder.

13. Licensee's Warranty and Indemnification: Licensee will indemnify and hold harmless Licensor from any and all claims, liabilities, losses and damages arising from any breach of Licensee's warranties, representations or agreements under this Agreement or in any way resulting from or connected with Licensee's use of the Composition other than as authorized herein. Licensee further warrants and represents that it has not exploited or authorized the exploitation of and will not exploit or authorize the exploitation of the Composition in any media or context other than the approved use as set forth herein, and any such unauthorized use constitutes intentional infringement by Licensee as defined under the Copyright Act and shall entitle Licensor to all applicable remedies thereunder in addition to any other rights and remedies Licensor may have in law or in equity.

14. Copy: Licensee shall provide Licensor with two (2) DVD copies of each basic version of the Trailer within 30 days from the first broadcast of the Trailer.

15. Conditions Precedent: The license granted herein shall be of no force or effect until Licensee pays the License Fee specified herein and until this Agreement is fully executed by Licensee and Licensor. This license shall terminate upon notice to Licensee in the event of any material breach of the obligations hereunder by the Licensee or its permitted successors and assigns or Licensee's distributor(s), provided that Licensor has notified Licensee of any curable breach or non-performance in writing and Licensee fails to cure same within ten (10) days after the sending of such notice. Any termination which occurs pursuant to this paragraph shall render the use of the Composition in the Trailer unauthorized, and Licensor shall thereupon be entitled to any and all legal and equitable remedies. Notwithstanding any such termination, Licensor shall have the right to retain as its property all sums paid by Licensee to Licensor hereunder, free of any claim by Licensee.

16. Assignment: This Agreement shall inure to and be binding upon the parties and their respective heirs, successors and assigns provided, however, that without Licensor's prior written consent Licensee shall not assign, license or otherwise transfer or encumber directly or indirectly (including by means of a stock or an asset transfer of any nature) any of its rights or obligations hereunder to any person or entity. If Licensee does so assign, license, transfer or encumber any of its rights or obligations hereunder, this Agreement shall automatically terminate

2

and be of no further force and effect, and all rights granted hereunder shall revert to Licensor.

17.   Entire Agreement: This instrument constitutes the entire agreement of the parties relating to the subject matter hereof, and any prior agreement, understanding, representations and commitments concerning such subject matter are hereby superseded and terminated in their entirety and are of no further force or effect. There are no contemporaneous oral agreements between the parties hereto relating to the subject matter hereof, and the parties have not executed this Agreement in reliance upon any representation or promise other than those specified herein. This Agreement can be modified or terminated only by a written instrument executed by both parties.

18.   Choice of Law: This Agreement shall be deemed to have been made in the State of California, and the validity of this Agreement and the construction, interpretation, and enforcement thereof, and the rights of the parties therein, shall be determined under, governed by and construed in accordance with the laws of the State of California. The parties hereto agree that all actions or proceedings arising at law or in equity in connection with this agreement shall be tried and litigated only in the state and federal courts located in the County of Los Angeles, State of California, which shall have exclusive subject matter jurisdiction over the parties hereto and shall be the exclusive venue of such matters. Notwithstanding the foregoing, the parties further agree that Licensor shall have the right to initiate equitable proceedings in any other court which would have subject matter jurisdiction over the matter in controversy in the absence of the language deeming the contract to have been made in California. If, in any action, suit, or other proceeding, a controversy or dispute arises which is based on or related to this Agreement or any provision hereof, the party prevailing therein shall be entitled to recover as an element of its costs of suit, separate and apart from damages, all reasonable attorneys' fees incurred therein, whether or not such action, suit, or proceeding proceeds to final judgment. No such sum for attorneys' fees shall reduce the amount of a judgment, and the amount of a judgment shall not be considered in determining whether such fees are reasonable.

ACCEPTED AND AGREED:

| Licensor: | Licensee: |
|---|---|
| Anthem Music and Media Group | Flyer Entertainment |
| d/b/a The Bicycle Music Company | o/b/o its client, Fox Home Entertainment |
| 449 South Beverly Drive, Suite 300 | 12100 Olympic Blvd #335 |
| Beverly Hills, CA 90212 | Los Angeles, CA 90064 |
| By: _____ <br>    Evelyn J. Paglinawan <br>    Director, Licensing & Legal Affairs | By: _____ <br>    An authorized signatory |

3

## MASTER USE LICENSE
## ADVERTISEMENT

This Master Use License Agreement (the "Agreement") is made and entered into as of November 4, 2011 by and between Nettwerk Productions ("Licensor") and Flyer Entertainment ("Licensee").

A. Licensor is the exclusive owner of those certain master recordings (the "Master"), including the sound recording copyrights therein, embodying the musical performance of Radical Face (the "Artist") of the musical composition entitled "Doorways" (the "Composition").

B. Licensee as agent for Fox Million Moments (the "Client") is engaged in the business of producing and exploiting television advertisements and, with respect thereto, has produced an advertisement entitled "Holiday Domestic" (the "Advertisement").

C. Licensee desires to utilize the Master in connection with the creation of the Advertisement and the marketing of Fox Million Moments (the "Product").

NOW THEREFORE, in consideration of the mutual covenants set forth herein, the parties do hereby agree as follows:

1. USE:     The length, number and type of uses of the Master to be licensed by Licensee hereunder is as follows:

|    | Length | Type |
|----|--------|------|
| a. | 0:60   | Background Vocal |

2. TERRITORY:     The territory covered under this license shall be North America (the "Territory").

3. GRANT OF RIGHTS:     Subject to the terms hereof, Licensor hereby grants to Licensee as agent for the Client the non-exclusive, limited right, license and authority to do any or all of the following only:

a. To record and to re-record and dub throughout the Territory the aforesaid type and use of the Master in synchronization or timed relation with the Advertisement for the Product, but not otherwise, and to make copies of such Advertisement containing the Master, all in accordance with the terms, conditions, and limitations set forth herein. Licensor shall supply Licensee, upon Licensee's request, with a tape copy of the Master for use as specified herein, and Licensee shall pay Licensor's usual charges in connection with the making and delivering of any such tape copy;

NPP- Advertisement - Master

1

    b. To exhibit the Master as embodied in the Advertisement, and portions thereof, to audiences throughout the Territory by means of Internet and theatrical all in accordance with the terms, conditions, limitations, and reservations hereinafter set forth.

4. TERM:    The Master may be used in the Program for a term of four (4) weeks for theatrical uses commencing November 4, 2011 and six (6) weeks for Internet use commencing November 5, 2011 (the "Term").

5. ANCILLARY PAYMENTS:    Licensee shall make any and all payments to all musicians, vocalists, arrangers, and copyists whose performances are embodied in the Master which may be required under the American Federation of Musicians Labor Agreement, the American Federation of Television and Radio Artists Labor Agreement, or any other applicable and binding union agreement in connection with the so-called "re-use" of the Master. Further, Licensee shall make any and all necessary synchronization license payments to the publisher(s) of the compositions embodied in the Master. Licensee shall indemnify Licensor and hold Licensor free and harmless from and against any and all claims, liabilities, costs, losses, damages or expenses, including reasonable attorney's fees and court costs, arising out of any failure or breach by Licensee with respect to its obligations as set forth in this paragraph.

6. MASTER USE FEE:    For the use of the Master in connection with the Advertisement as set out in paragraph 3 above, Licensee shall pay to Licensor the sum of Twenty Seven Thousand Five Hundred United States Dollars (USD $27,500.00) (the "Fee") on a most favoured nations basis with the licensor of the rights in the Composition used in the Advertisement provided that such licensor is granting substantially the same rights in the Composition as Licensor has granted in the Master hereunder.

7. PAYMENT DEFAULT:

    a. Licensee shall pay Fee no later than Thirty (30) days following the date of receipt of the Agreement if delivered via courier or email, or Forty (40) days from date of postmark if delivered via regular post. In the event that Licensee fails to pay to Licensor the Fee as specified herein, Licensor shall give Licensee written notice that, unless such default is remedied within Thirty (30) days from receipt of the notice, such default shall constitute a breach of this Agreement and an infringement of the Licensor's copyright in the Master;

    b. Licensor's rights and remedies in the event of a breach or alleged breach of this Agreement by Licensee, other than a failure by the Licensee to pay the Fee to the Licensor, shall be limited to Licensor's right, if any, to recover damages in an action at law and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Advertisement.

2

8.  NON-EXCLUSIVITY:   All rights granted hereunder are granted on a non-exclusive basis and Licensor shall have the right to grant similar licenses for the use of the Master to other licensees without limitation.

9.  RESERVATION OF RIGHTS:   This Agreement does not authorize or permit any use of the Master not expressly set forth herein, and all other rights are expressly reserved. By way of clarification and not in limitation thereof, this license does not grant the right to record the Master on any phonograph records, cassettes, compact discs, or other sound-only configurations now known or unknown.

10. LICENSOR WARRANTY:       Licensor warrants that it (i) owns or controls all rights in and to the Master and that the consent of no other party is required in connection with Licensee's use of the Master as herein authorized, with the exception of the parties set forth in paragraph 5 hereof, which consent Licensee shall obtain, and (ii) that it has the legal right to grant this license, and this license is given and accepted without any other warranty or recourse. If said warranty shall be breached in whole or in part, Licensor shall either re-pay to Licensee the consideration theretofore paid to Licensor by Licensee for this license, to the extent of the part thereof which is breached, or shall hold Licensee harmless to the extent of the consideration theretofore paid to the Licensor by Licensee for this license. In no event shall Licensor's total liability exceed the amounts received by it hereunder.

11. LEGAL ACTION:       This Agreement shall be governed by and subject to the laws of the State of California, applicable to agreements made and to be wholly performed within such state.

12. CUE SHEET:     Licensee shall prepare and deliver to Licensor a cue sheet for the Advertisement containing the Master, indicating the use and time sequence of the Master, within a reasonable time after such version has been first exhibited.

13. ASSIGNABILITY:       Licensee and Licensor shall have the right to assign this Agreement and any rights granted to Licensee or Licensor hereunder, and any of their respective obligations hereunder, to any third party, in which event this license shall be binding upon and shall inure to the benefit of the respective successors and/assigns of the parties hereto; provided, however, that Licensee and Licensor shall remain secondarily liable with regard to their respective duties under this Agreement.

14. NOTICES: All notices hereunder shall be in writing and shall be given by personal delivery to an officer of Licensee or Licensor, or by mail in the United States mail, postage pre-paid, or by telecopier, or by telegraph with all charges pre-paid, at the addresses set forth herein, or such other address as either Licensee or Licensor may designate by notice to the other, and the date of such personal

3

delivery, mailing, telecopying, or telegraphing shall be the time of the giving of such notice.

IN WITNESS WHEREOF, the parties have caused the foregoing to be executed as of the date and year first above written.

FLYER ENTERTAINMENT

NETTWERK PRODUCTIONS
FED ID# 98-0180464

By: _____

By: _____

Title: _____
    An authorized signatory
Address:
12100 Olympic Blvd., Suite 335
Los Angeles, CA 90064
U.S.A.

Title: BUSINESS AFFAIRS
    An authorized signatory
Address:
1650 West 2nd Avenue
Vancouver, BC V6J 4R3
Canada

4

### MASTER USE LICENSE
### ADVERTISEMENT

This Master Use License Agreement (the "Agreement") is made and entered into as of January 25th, 2012 by and between Nettwerk Productions ("Licensor") and Flyer Entertainment ("Licensee").

    A. Licensor is the exclusive owner of those certain master recordings (the "Master"), including the sound recording copyrights therein, embodying the musical performance of Radical Face (the "Artist") of the musical composition entitled "Doorways" (the "Composition").

    B. Licensee as agent for Fox Million Moments (the "Client") is engaged in the business of producing and exploiting television advertisements and, with respect thereto, has produced an advertisement entitled "Own The Moments International" (the "Advertisement").

    C. Licensee desires to utilize the Master in connection with the creation of the Advertisement and the marketing of Fox Million Moments (the "Product").

NOW THEREFORE, in consideration of the mutual covenants set forth herein, the parties do hereby agree as follows:

    1. USE:    The length, number and type of uses of the Master to be licensed by Licensee hereunder is as follows:

| | Length | Type |
|---|---|---|
| a. | Up to 1:37 | Background Vocal |

    2. TERRITORY:    The territory covered under this license shall be The World (the "Territory").

    3. GRANT OF RIGHTS:    Subject to the terms hereof, Licensor hereby grants to Licensee as agent for the Client the non-exclusive, limited right, license and authority to do any or all of the following only:

    a. To record and to re-record and dub throughout the Territory the aforesaid type and use of the Master in synchronization or timed relation with the Advertisement for the Product, but not otherwise, and to make copies of such Advertisement containing the Master, all in accordance with the terms, conditions, and limitations set forth herein. Licensor shall supply Licensee, upon Licensee's request, with a tape copy of the Master for use as specified herein, and Licensee shall pay Licensor's usual charges in connection with the making and delivering of any such tape copy;

1

NPP- Advertisement - Master

   b. To exhibit the Master as embodied in the Advertisement, and portions thereof, to audiences throughout the Territory by means of All Internet Media all in accordance with the terms, conditions, limitations, and reservations hereinafter set forth.

4. <u>TERM</u>:   The Master may be used in the Program for a term of two (2) months commencing October 31st, 2012 – December 31st, 2012 (the "Term").

5. <u>ANCILLARY PAYMENTS</u>:   Licensee shall make any and all payments to all musicians, vocalists, arrangers, and copyists whose performances are embodied in the Master which may be required under the American Federation of Musicians Labor Agreement, the American Federation of Television and Radio Artists Labor Agreement, or any other applicable and binding union agreement in connection with the so-called "re-use" of the Master.  Further, Licensee shall make any and all necessary synchronization license payments to the publisher(s) of the compositions embodied in the Master.  Licensee shall indemnify Licensor and hold Licensor free and harmless from and against any and all claims, liabilities, costs, losses, damages or expenses, including reasonable attorney's fees and court costs, arising out of any failure or breach by Licensee with respect to its obligations as set forth in this paragraph.

6. <u>MASTER USE FEE</u>:   For the use of the Master in connection with the Advertisement as set out in paragraph 3 above, Licensee shall pay to Licensor the sum of Three Thousand Five Hundred United States Dollars (USD $3,500.00) (the "Fee") on a most favoured nations basis with the licensor of the rights in the Composition used in the Advertisement provided that such licensor is granting substantially the same rights in the Composition as Licensor has granted in the Master hereunder.

7. <u>PAYMENT DEFAULT</u>:

   a. Licensee shall pay Fee no later than Thirty (30) days following the date of receipt of the Agreement if delivered via courier or email, or Forty (40) days from date of postmark if delivered via regular post.  In the event that Licensee fails to pay to Licensor the Fee as specified herein, Licensor shall give Licensee written notice that, unless such default is remedied within Thirty (30) days from receipt of the notice, such default shall constitute a breach of this Agreement and an infringement of the Licensor's copyright in the Master;

   b. Licensor's rights and remedies in the event of a breach or alleged breach of this Agreement by Licensee, other than a failure by the Licensee to pay the Fee to the Licensor, shall be limited to Licensor's right, if any, to recover damages in an action at law and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Advertisement.

2

8. <u>NON-EXCLUSIVITY</u>:   All rights granted hereunder are granted on a non-exclusive basis and Licensor shall have the right to grant similar licenses for the use of the Master to other licensees without limitation.

9. <u>RESERVATION OF RIGHTS</u>:   This Agreement does not authorize or permit any use of the Master not expressly set forth herein, and all other rights are expressly reserved.  By way of clarification and not in limitation thereof, this license does not grant the right to record the Master on any phonograph records, cassettes, compact discs, or other sound-only configurations now known or unknown.

10. <u>LICENSOR WARRANTY</u>:      Licensor warrants that it (i) owns or controls all rights in and to the Master and that the consent of no other party is required in connection with Licensee's use of the Master as herein authorized, with the exception of the parties set forth in paragraph 5 hereof, which consent Licensee shall obtain, and (ii) that it has the legal right to grant this license, and this license is given and accepted without any other warranty or recourse.  If said warranty shall be breached in whole or in part, Licensor shall either re-pay to Licensee the consideration theretofore paid to Licensor by Licensee for this license, to the extent of the part thereof which is breached, or shall hold Licensee harmless to the extent of the consideration theretofore paid to the Licensor by Licensee for this license.  In no event shall Licensor's total liability exceed the amounts received by it hereunder.

11. <u>LEGAL ACTION</u>:      This Agreement shall be governed by and subject to the laws of the State of California, applicable to agreements made and to be wholly performed within such state.

12. <u>ASSIGNABILITY</u>:      Licensee and Licensor shall have the right to assign this Agreement and any rights granted to Licensee or Licensor hereunder, and any of their respective obligations hereunder, to any third party, in which event this license shall be binding upon and shall inure to the benefit of the respective successors and/assigns of the parties hereto; provided, however, that Licensee and Licensor shall remain secondarily liable with regard to their respective duties under this Agreement.

13. <u>NOTICES</u>: All notices hereunder shall be in writing and shall be given by personal delivery to an officer of Licensee or Licensor, or by mail in the United States mail, postage pre-paid, or by telecopier, or by telegraph with all charges pre-paid, at the addresses set forth herein, or such other address as either Licensee or Licensor may designate by notice to the other, and the date of such personal delivery, mailing, telecopying, or telegraphing shall be the time of the giving of such notice.

3

IN WITNESS WHEREOF, the parties have caused the foregoing to be executed as of the date and year first above written.

FLYER ENTERTAINMENT

NETTWERK PRODUCTIONS
FED ID# 98-0180464

By: _____

By: _____

Title: _____
    An authorized signatory
Address:
12100 Olympic Blvd. Suite 335
Los Angeles, CA 90064
U.S.A.

Title:  BUSINESS AFFAIRS
    An authorized signatory
Address:
1650 West 2nd Avenue
Vancouver,  BC  V6J 4R3
Canada

NPP- Advertisement - Master

THE
BICYCLE MUSIC COMPANY

449 S. BEVERLY DR. SUITE 300
BEVERLY HILLS, CA 90212
310-286-6600
F 310-286-6622
WWW.BICYCLEMUSIC.COM

As of March 16, 2012

Flyer Entertainment
o/b/o its client, Fox Home Entertainment (collectively "Licensee")
12100 Olympic Blvd #335
Los Angeles, CA 90064

The following, when signed by Licensee and Anthem Music and Media Group d/b/a The Bicycle Music Company c/o Penny Farthing Music (ASCAP) o/b/o Roy Berry Works At Planet Radio (ASCAP) ("Licensor") shall constitute our agreement to modify and amend ("Amendment") the Synchronization License dated January 7, 2011 ("Agreement") regarding use of the composition entitled **"DOORWAYS"** ("Composition") in the promotional trailer entitled Fox Million Moments "Generic" ("Promotion").

1. In consideration of an additional payment of Six Thousand U.S. Dollars ($6,000.00), Licensee's rights in the Promotion shall extend to include one (1) background vocal use for sixty seconds (0:60) in out-of-home use throughout the U.S.A. and Canada, commencing as of the date of this Amendment and terminating on July 31, 2012.

2. Except as herein modified and amended, all terms and conditions of the Agreement are hereby ratified and affirmed and shall remain in full force and effect.

ACCEPTED AND AGREED:

Anthem Music and Media Group
d/b/a The Bicycle Music Company
449 South Beverly Drive, Suite 300
Beverly Hills, CA 90212

Flyer Entertainment
o/b/o its client, Fox Home Entertainment
12100 Olympic Blvd #335
Los Angeles, CA 90064

By: _____
An authorized signatory

By: _____
An authorized signatory

Exhibit "E", Page 1

## MASTER USE LICENSE
### ADVERTISEMENT

This Master Use License Agreement (the "Agreement") is made and entered into as of March 30, 2012 by and between Nettwerk Productions ("Licensor") and Flyer Entertainment ("Licensee").

A. Licensor is the exclusive owner of those certain master recordings (the "Master"), including the sound recording copyrights therein, embodying the musical performance of Radical Face (the "Artist") of the musical composition entitled "Doorways" (the "Composition").

B. Licensee as agent for Fox Million Moments (the "Client") is engaged in the business of producing and exploiting television advertisements and, with respect thereto, has produced an advertisement entitled "Fox Own The Moments Generic" (the "Advertisement").

C. Licensee desires to utilize the Master in connection with the creation of the Advertisement and the marketing of Fox Million Moments (the "Product").

NOW THEREFORE, in consideration of the mutual covenants set forth herein, the parties do hereby agree as follows:

1. USE:    The length, number and type of uses of the Master to be licensed by Licensee hereunder is as follows:

   |   | Length | Type |
   |---|--------|------|
   | a. | 0:60 | Background Vocal |

2. TERRITORY:    The territory covered under this license shall be North America (the "Territory").

3. GRANT OF RIGHTS:    Subject to the terms hereof, Licensor hereby grants to Licensee as agent for the Client the non-exclusive, limited right, license and authority to do any or all of the following only:

   a. To record and to re-record and dub throughout the Territory the aforesaid type and use of the Master in synchronization or timed relation with the Advertisement for the Product, but not otherwise, and to make copies of such Advertisement containing the Master, all in accordance with the terms, conditions, and limitations set forth herein. Licensor shall supply Licensee, upon Licensee's request, with a tape copy of the Master for use as specified herein, and Licensee shall pay Licensor's usual charges in connection with the making and delivering of any such tape copy;

NPP- Advertisement - Master

1

    b. To exhibit the Master as embodied in the Advertisement, and portions thereof, to audiences throughout the Territory by means of Out of Home media, all in accordance with the terms, conditions, limitations, and reservations hereinafter set forth.

4. TERM:    The Master may be used in the Program from March 16, 2012 until July 31, 2012 (the "Term").

5. ANCILLARY PAYMENTS:    Licensee shall make any and all payments to all musicians, vocalists, arrangers, and copyists whose performances are embodied in the Master which may be required under the American Federation of Musicians Labor Agreement, the American Federation of Television and Radio Artists Labor Agreement, or any other applicable and binding union agreement in connection with the so-called "re-use" of the Master. Further, Licensee shall make any and all necessary synchronization license payments to the publisher(s) of the compositions embodied in the Master. Licensee shall indemnify Licensor and hold Licensor free and harmless from and against any and all claims, liabilities, costs, losses, damages or expenses, including reasonable attorney's fees and court costs, arising out of any failure or breach by Licensee with respect to its obligations as set forth in this paragraph.

6. MASTER USE FEE:    For the use of the Master in connection with the Advertisement as set out in paragraph 3 above, Licensee shall pay to Licensor the sum of Six Thousand United States Dollars (USD $6,000.00) (the "Fee") on a most favoured nations basis with the licensor of the rights in the Composition used in the Advertisement provided that such licensor is granting substantially the same rights in the Composition as Licensor has granted in the Master hereunder.

7. PAYMENT DEFAULT:

    a. Licensee shall pay Fee no later than Thirty (30) days following the date of receipt of the Agreement if delivered via courier or email, or Forty (40) days from date of postmark if delivered via regular post. In the event that Licensee fails to pay to Licensor the Fee as specified herein, Licensor shall give Licensee written notice that, unless such default is remedied within Thirty (30) days from receipt of the notice, such default shall constitute a breach of this Agreement and an infringement of the Licensor's copyright in the Master;

    b. Licensor's rights and remedies in the event of a breach or alleged breach of this Agreement by Licensee, other than a failure by the Licensee to pay the Fee to the Licensor, shall be limited to Licensor's right, if any, to recover damages in an action at law and in no event shall Licensor be entitled by reason of any breach or alleged breach to enjoin, restrain or seek to enjoin or restrain the distribution or other exploitation of the Advertisement.

2

Exhibit "F", Page 2

8. NON-EXCLUSIVITY:   All rights granted hereunder are granted on a non-exclusive basis and Licensor shall have the right to grant similar licenses for the use of the Master to other licensees without limitation.

9. RESERVATION OF RIGHTS:   This Agreement does not authorize or permit any use of the Master not expressly set forth herein, and all other rights are expressly reserved. By way of clarification and not in limitation thereof, this license does not grant the right to record the Master on any phonograph records, cassettes, compact discs, or other sound-only configurations now known or unknown.

10. LICENSOR WARRANTY:       Licensor warrants that it (i) owns or controls all rights in and to the Master and that the consent of no other party is required in connection with Licensee's use of the Master as herein authorized, with the exception of the parties set forth in paragraph 5 hereof, which consent Licensee shall obtain, and (ii) that it has the legal right to grant this license, and this license is given and accepted without any other warranty or recourse. If said warranty shall be breached in whole or in part, Licensor shall either re-pay to Licensee the consideration theretofore paid to Licensor by Licensee for this license, to the extent of the part thereof which is breached, or shall hold Licensee harmless to the extent of the consideration theretofore paid to the Licensor by Licensee for this license. In no event shall Licensor's total liability exceed the amounts received by it hereunder.

11. LEGAL ACTION:       This Agreement shall be governed by and subject to the laws of the State of California, applicable to agreements made and to be wholly performed within such state.

12. CUE SHEET:       Licensee shall prepare and deliver to Licensor a cue sheet for the Advertisement containing the Master, indicating the use and time sequence of the Master, within a reasonable time after such version has been first exhibited.

13. ASSIGNABILITY:       Licensee and Licensor shall have the right to assign this Agreement and any rights granted to Licensee or Licensor hereunder, and any of their respective obligations hereunder, to any third party, in which event this license shall be binding upon and shall inure to the benefit of the respective successors and/assigns of the parties hereto; provided, however, that Licensee and Licensor shall remain secondarily liable with regard to their respective duties under this Agreement.

14. NOTICES:  All notices hereunder shall be in writing and shall be given by personal delivery to an officer of Licensee or Licensor, or by mail in the United States mail, postage pre-paid, or by telecopier, or by telegraph with all charges pre-paid, at the addresses set forth herein, or such other address as either Licensee or Licensor may designate by notice to the other, and the date of such personal

delivery, mailing, telecopying, or telegraphing shall be the time of the giving of such notice.

IN WITNESS WHEREOF, the parties have caused the foregoing to be executed as of the date and year first above written.

FLYER ENTERTAINMENT

NETTWERK PRODUCTIONS
FED ID# 98-0180464

By: _____

By: _____

Title: _____
      An authorized signatory
Address:
12100 Olympic Blvd., Suite 335
Los Angeles, CA 90064
U.S.A.

Title: BUSINESS AFFAIRS
       An authorized signatory
Address:
1650 West 2nd Avenue
Vancouver, BC V6J 4R3
Canada

4

NPP- Advertisement - Master

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John F. Walter and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

### CV12- 5829 JFW (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Kyle P. Kelley, Esq. [State Bar No. 178302]
Law Offices of Kyle P. Kelley
433 N. Camden Drive, Suite 965
Beverly Hills, CA 90210
Tel: (310) 273-0590  Fax: (310) 273-1115

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| ANTHEM MUSIC & MEDIA GROUP, a Delaware limited liability company, doing business as THE BICYCLE MUSIC COMPANY | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV12-05829** JFW (JCGx) |
| v. | |
| FLYER ENTERTAINMENT, INC., a California Corporation; TWENTIETH CENTURY FOX HOME ENTERTAINMENT, a business entity form unknown | **SUMMONS** |
| DEFENDANT(S). | |

TO:  DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Kyle P. Kelley, Esq._____, whose address is _433 N. Camden Drive, Suite 965, Beverly Hills CA 90210_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JUL – 6 2012

Dated: _____

Clerk, U.S. District Court

By: _____
     Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Kyle P. Kelley, Esq. [State Bar No. 178302]
Law Offices of Kyle P. Kelley
433 N. Camden Drive, Suite 965
Beverly Hills, CA 90210
Tel: (310) 273-0590 Fax: (310) 273-1115

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHEM MUSIC & MEDIA GROUP, a Delaware limited liability company, doing business as THE BICYCLE MUSIC COMPANY<br><br>PLAINTIFF(S)<br>v.<br><br>FLYER ENTERTAINMENT, INC., a California Corporation; TWENTIETH CENTURY FOX HOME ENTERTAINMENT, a business entity form unknown<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV12- 05829 JFW (JЪbx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Kyle P. Kelley, Esq._____, whose address is _433 N. Camden Drive, Suite 965, Beverly Hills CA 90210_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

JUL  - 6 2012

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____          By: _____
                                              Deputy Clerk

1154

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ANTHEM MUSIC & MEDIA GROUP, a Delaware limited liability company, doing business as THE BICYCLE MUSIC COMPANY

**DEFENDANTS**
FLYER ENTERTAINMENT, INC., a California Corporation; TWENTIETH CENTURY FOX HOME ENTERTAINMENT, a business entity form unknown

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Kyle P. Kelley, Esq. [Telephone: (310) 273-0590]
433 N. Camden Drive, Suite 965
Beverly Hills, California 90210

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ App. $80,000 plus atty fees & int.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement under 17 U.S.C. Section 501 et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | |

CV12-05829

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

          ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

          ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

          ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Anthem Music & Media Group -- Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendant Flyer Entertainment, Inc. -- Los Angeles County<br>Fox Home Entertainment -- Los Angeles County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date July 5, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |